# EXHIBIT A

## EXHIBIT A

## AFFIDAVIT OF JAIME A. RAINWATER

I, Jaime A. Rainwater, being duly sworn, depose and state as follows:

1. I am a Special Agent ("SA") of the United States Drug Enforcement Administration ("DEA"), currently assigned to the Springfield Resident Office ("SRO"), in the New England Field Division. I have been a Special Agent with DEA since October 2010. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878, as well as Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of offenses enumerated in Title 21 of the United States Code and Title 18, United States Code, Section, 2516(1)(e).

2. I submit this affidavit in support of a Complaint for Forfeiture *in Rem* against the following assets:

   a. one black 2008 BMW X5, bearing vehicle identification number 5UXFE43598L034621 ("Vehicle 1");

   b. one white 2011 Mercedes C300, bearing vehicle identification number WDDGF8BBXBR173605 ("Vehicle 2"); and,

   c. $2,372 United States Currency ("USC");

(collectively, the "Vehicles and USC"). As set forth below, probable cause exists to believe that the Vehicles are subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(3), because the Vehicles represent property which was used, or intended to be used, as a container for a controlled substance, which was manufactured, distributed, dispensed, or acquired in violation of Title 21, United States Code, Sections 841, and/or 846.

3. I also have probable cause to believe the Vehicles are subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(4), because the Vehicles represent conveyances which were used, or intended for use, to transport, or in any manner to

facilitate the transportation, sale, receipt, possession, or concealment for a controlled substance, which was manufactured, distributed, dispensed, or acquired in violation of Title 21, United States Code, Sections 841, and/or 846.

4. I also have probable cause to believe the USC is subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), because the USC represent moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, United States Code, Sections 841, and/or 846; and/or represents all proceeds traceable to an exchange in violation of Title 21, United States Code, Sections 841, and/or 846, and/or represents all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Title 21, United States Code, Sections 841, and/or 846.

5. By way of background, I have received basic training in narcotics investigations at the Justice Training Center located in Quantico, Virginia. I have received training from DEA in specialized narcotic investigative matters, including but not limited to, the manner and methods of operation of major United States, Mexican, and Central and South American Drug Trafficking Organizations ("DTOs"). As result of my experience and training, I am familiar with the manner and methods in which various types of illegal drugs are cultivated, imported, manufactured, smuggled, distributed, or diverted. I am familiar with the manner and methods used to finance drug transactions and the methods used to launder corresponding drug proceeds. In connection with my official duties as a DEA Special Agent, I have personally conducted or assisted in the investigation of violations of Title 18, 21, and 31 of the United States Code and other federal criminal statutes with respect to United States, Mexican, Central and South

American DTOs. Further, I have debriefed numerous witnesses with knowledge of their methods of operation for these DTOs.

6. I have participated in numerous narcotics investigations. These investigations have resulted in the arrest and convictions of numerous targets and the seizures of various narcotics and assets. During the course of these investigations, I have interviewed other law enforcement personnel, and interviewed and debriefed defendants, informants, and cooperating witnesses who had personal knowledge regarding the methods of operations for major narcotics trafficking organizations. I have conducted physical surveillance; prepared affidavits; executed numerous search warrants; and analyzed information obtained from served subpoenas. I have analyzed and evaluated evidence and information obtained from witnesses; other law enforcement personnel; from commercial and proprietary data bases; obtained during the execution of search warrants; obtained from court authorized pen register and trap and trace, telephone and email intercepts; obtained from recorded telephone tolls; obtained from the review of various types of financial documents; and provided sworn testimony to assist in the prosecution of defendants.

7. This affidavit is based upon my personal knowledge, as well as information provided to me by law enforcement personnel involved in the investigation, and my review of records and reports relating to the investigation. This affidavit does not contain all the information known to me and other law enforcement officers regarding this investigation, but only those facts sufficient to establish the forfeitability of the Vehicles and USC.

### Background of the Investigation

8.  During the months of April and May of 2017, Special Agents and Task Force Officers assigned to the DEA SRO identified a Dominican-based drug trafficking organization (the "DTO") operating in the city of Holyoke, believed to be responsible for the distribution of both heroin and fentanyl to individuals in Western Massachusetts, Vermont, and New Hampshire.

9.  In May of 2017, wiretaps were initiated, pursuant to Massachusetts state law, on several members of this DTO, including Fausto A. Pujols ("Pujols"). Based on intercepted communications, agents were able to identify Pujols as a significant heroin/fentanyl distributor in Western Massachusetts.

10. Pursuant to court order, DEA SRO began to intercept communications on Pujols' cellular telephone. As described herein, the information intercepted from Pujols' cellular communications, daily activities observed by mobile surveillance, and ultimately the discovery of Pujols' heroin mill operation[1] in Springfield, led to the seizure of the Vehicles and USC.

### Seizure of the Assets

11. Between June and August, 2017, DEA SRO agents, while conducting surveillance on the DTO, observed Pujols driving Vehicle 1 and Vehicle 2 on numerous occasions. On multiple occasions, Pujols was observed by law enforcement driving Vehicle 1 to and from one of the heroin mills, located at 57/59 Sterling Street in Springfield, and investigators also observed Vehicle 1 parked in front of the main heroin mill operation, located at 73 Cherrelyn Street in Springfield.

---

[1] A heroin mill is a location used by a DTO to receive, store, package and prepare heroin for further distribution.

12. In addition, as discussed below, in June 2017, Vehicle 1 was utilized to transport drug money to one of Pujols' heroin sources of supply from New York. Based on intercepted communications over Pujols' cellular telephones, agents established surveillance and observed Vehicle 1 depart from one of Pujols' residences in Western Massachusetts. Agents observed Vehicle 1 travel to a location agents believed was a stash location. Vehicle 1 was later observed arriving at the Malecon Restaurant (the "Restaurant"). At or around this same time, a black Mercedes, bearing a New York registration, arrived at the Restaurant. Based on the substance of intercepted communications between the suspected source of heroin supply and Pujols, as well as surveillance and their training and experience, agents believe Pujols transported drug proceeds in Vehicle 1 from the stash house to the vicinity of the Restaurant to pay his source of supply for a drug debt.

13. SRO agents conducting surveillance also observed Pujols operating Vehicle 2 on multiple occasions. For example, in June 2017, agents observed Pujols arrive at the Restaurant in Vehicle 2. Moments later, a brown Infiniti SUV (the "Infiniti") arrived at the Restaurant. Shortly after the Infiniti SUV arrived, Pujols exited the restaurant and entered Vehicle 2. Pujols departed from the Restaurant and the Infiniti followed him. Pujols turned onto a street directly behind the Restaurant and agents observed Pujols pull directly next to the Infiniti SUV so that they were stopped driver's side window to driver's side window. Pujols (in Vehicle 2) and the Infiniti remained in that position for a brief moment before promptly departing the area.

14. Less than ten minutes later, Vehicle 2 was observed at 57/59 Sterling Street in Springfield, which was later identified as a heroin mill for the Pujols DTO. SRO agents conducting surveillance then observed Vehicle 2 depart from this location and travel to 73

Cherellyn Street, which was later identified as the primary heroin mill location for the Pujols DTO.

15. I believe based on my training and experience, the window to window maneuver observed prior to Pujols arriving at the two heroin mill locations in Vehicle 2 was a drug transaction. I believe based on my training and experience that the person in the Infiniti provided drugs or drug paraphernalia to Pujols, which Pujols then transported, while operating Vehicle 2, to the heroin mills located at 57/59 Sterling Street, and 73 Cherellyn Street in Springfield.

16. On a separate occasion in June 2017, agents on surveillance observed Vehicle 2 in the rear parking lot of 18 East Hooker Street in Springfield. This address was the residence of a suspected drug trafficker,[2] who was arrested at this location shortly after this surveillance with approximately 30,000 dosage units of, what was later confirmed by the DEA Northeast Regional Laboratory to be a mixture of heroin and fentanyl, controlled substances. Based on the substance of intercepted communications between Pujols and the suspected drug trafficker's cellular devices, the two were meeting at the drug trafficker's apartment at that time.

17. On August 7, 2017, search warrants were obtained for Vehicles 1 and 2, 57/59 Sterling Street in Springfield, 73 Cherrelyn Street in Springfield, with two other locations used by the Pujols DTO.

18. During the execution of the search warrant at 73 Cherrelyn Street, agents seized approximately 6 kilograms of what was later confirmed by the laboratory to be heroin and fentanyl, 5,000 dosage units of heroin/fentanyl packaged for distribution, along with equipment

---

[2] This individual's identity is known to me.

6

used to operate a heroin mill. As discussed in paragraph 20 below, much of the controlled substances were held together in bundles using rubber-bands.

19. During the execution of the warrant at 57/59 Sterling Street, agents discovered equipment and drug paraphernalia used to operate a heroin mill. Later that day, Pujols was arrested at 17 Montpelier Street in Springfield and charged with conspiracy to violate the controlled substance act to traffic heroin and trafficking heroin over 200 grams in the State of Massachusetts. On December 21, 2017, a grand jury in Hampden County District Court returned an indictment relating to the above offenses. Docket Numbers 1779CR00588A, 1779CR00588B, 1779CR00588C & 1779CR00588D.

20. At the time of its seizure, Vehicle 1 was located at 17 Montpelier Street. A search of Vehicle 1 revealed several large boxes containing rubber bands, which were consistent with packaging retail distribution quantities of heroin. The rubber bands found in Vehicle 1 were substantially similar to the rubber bands agents observed being used to package the "packs" of heroin found at the primary heroin mill located at 73 Cherrelyn Street. Based on my training and experience, I know that drug traffickers often utilize rubber bands to help bundle heroin and the presence of rubber bands in Vehicle 1, similar to those found bundling suspected heroin at the DTO's heroin mill, is consistent with the use of the vehicle in furtherance of the DTO.

21. At the time of its seizure, Vehicle 2 was located at 23 Bonner Street in Chicopee, Massachusetts, transported to a secure facility and searched. A search of Vehicle 2 revealed the USC. I believe the USC to be proceeds of drug trafficking and money used, or intended to be used in furtherance of drug trafficking because it was located inside a vehicle that was often utilized in furtherance of the DTO and the currency was bundled in a way consistent with drug

money. Specifically, the money was found in the center console of the vehicle and inside a white letter envelope.

22.     Both vehicles were seized and remain in DEA custody. Vehicle 1 is registered in Massachusetts to Pujols and Vehicle 2 bears a Florida Transport registration in the name of an auto company in Orlando, Florida.

23.     Based on intercepted communications on Pujols' cellular telephones, agent surveillance, the seizure of the rubber bands from Vehicle 1 seemingly intended to be used to package heroin, the seizure of the USC in Vehicle 2 in an envelope in the center console, the seizures at the two heroin mills, including significant amounts of controlled subtances, and my training and experience, I believe Pujols utilized Vehicles 1 and 2 to transport controlled substances, USC and drug paraphernalia. I also believe the USC found during the search of Vehicle 2 was drug proceeds from Pujols' heroin DTO.

### Conclusion

24.     Based upon the information set forth above, I submit that probable cause exists to believe that the Vehicles are subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(3), as the Vehicle represents property which was used, or intended to be used, as a container for a controlled substance, which was manufactured, distributed, dispensed, or acquired in violation of Title 21, United States Code, Sections 841, and/or 846.

25.     I also submit that probable cause exists to believe the Vehicle is subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(4), because the Vehicle represents a conveyances which was used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment for a

controlled substance, which was manufactured, distributed, dispensed, or acquired in violation of Title 21, United States Code, Sections 841, and/or 846.

26.     Finally, I also submit that probable cause exists to believe the USC is subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), because the USC represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, United States Code, Sections 841, and/or 846; and/or represents all proceeds traceable to an exchange in violation of Title 21, United States Code, Sections 841, and/or 846, and/or represents all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Title 21, United States Code, Sections 841, and/or 846.

Signed under the pains and penalties of perjury this 19th day of January, 2018.

_Jaime Rainwater_
Jaime A. Rainwater
Special Agent
Drug Enforcement Administration